# NORTHLINE ENTERPRISES, INC.
# ARTICLES OF INCORPORATION

## ARTICLE I

### Name

The name of the corporation is Northline Enterprises, Inc.

## ARTICLE II

### Purpose

The purpose of the corporation is to engage in any lawful activity for which corporations may be formed under the Business Corporation Law of Louisiana.

## ARTICLE III

### Stock

The aggregate number of shares which the corporation shall have authority to issue is one hundred (100) shares of common stock without par value. All or any part of such shares may be issued by the corporation from time-to-time, as may be determined by the Board of Directors. No transfer of shares shall be binding on this corporation unless the same appear upon the books thereof.

## ARTICLE IV

### Preemptive Rights

Shareholders shall have preemptive rights.

## ARTICLE V

### Shareholders' Consents

Whenever by any provision of law, the Articles of Incorporation or the By-Laws, the affirmative vote of shareholders is required to authorize or constitute corporate

action, the consent in writing to such corporate action signed only by shareholders holding that proportion of the total voting power on the question which is required by law, the Articles of Incorporation or the By-Laws, whichever requirement is higher, shall be sufficient for the purpose, without necessity for a meeting of shareholders.

## ARTICLE VI

### Directors

Any director absent from a meeting of the Board of Directors or any committee thereof may be represented by any other director or shareholder, who may cast the vote of the absent director, according to the written instructions, general or special, of the absent director.

## ARTICLE VII

### Incorporator

The name and post office address of the incorporator is (NAME) Angela Micik, (ADDRESS) One Canal Place, Suite 2222, New Orleans, Louisiana, 70130.

WITNESSES:

_Karla Comardelle_

_Pamela VanHuff_

_Angela Micik_
Angela Micik
Incorporator

\northlin\articles.inc.kwc

- 2 -

## ACKNOWLEDGEMENT

STATE OF LOUISIANA

PARISH OF Orleans

BEFORE ME, the undersigned authority, personally came and appeared Angela Micik, to me known to be the person who signed the foregoing instrument as Incorporator, and who being duly sworn, did acknowledge and declare, in the presence of the two witnesses whose names are subscribed to said instrument, that ~~he~~ she /AM signed said instrument as ~~his~~ her /AM free act and deed for the purpose mentioned therein.

IN WITNESS WHEREOF, the said appearer and witnesses and I have hereunto affixed our hands on this 15 day of January, 1991, at New Orleans, Louisiana.

WITNESSES:

_Karla Comardelle_

_Pamela Van Hoff_

_Angela Micik_
**Appearer**

_Barbara Owens_
**NOTARY PUBLIC**

\forms.bla\acknowle.inc.kwc

## NORTHLINE ENTERPRISES, INC.

## INITIAL REPORT

STATE OF LOUISIANA

PARISH OF ORLEANS

TO: The Secretary of State
    Baton Rouge, Louisiana

Complying with La. R.S. 12:101, Northline Enterprises, Inc. hereby makes its initial report as follows:

### Registered Office

One Canal Place
Suite 2222
New Orleans, Louisiana 70130

### Registered Agent

Angela Micik
One Canal Place
Suite 2222
New Orleans, Louisiana 70130

### Directors

Angela Micik
One Canal Place
Suite 2222
New Orleans, LA 70130

Stephen L. Read
One Canal Place
Suite 2222
New Orleans, LA 70130

### Officers

President - Stephen L. Read

Secretary - Angela Micik

Signed this 15 day of January, 1991, at New Orleans, Louisiana.

_Angela Micik_
Incorporator

\northlin\initial.inc.kwc

## AFFIDAVIT OF ACCEPTANCE OF APPOINTMENT
## BY DESIGNATED REGISTERED AGENT
## ACT 769 OF 1987

To the State Corporation Department
State of Louisiana

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

On this 15 day of January, 1991, before me, a Notary Public in and for the State and Parish aforesaid, personally came and appeared Angela Micik, who is to me known to be the person, and who, being duly sworn, acknowledged to me that she I am does hereby accept appointment as the Registered Agent of Northline Enterprises, Inc., which is a Corporation authorized to transact business in the State of Louisiana pursuant to the provisions of the Title 12, Chapters 1,2 and 3, as may be amended.

_____
Angela Micik
Registered Agent

Subscribed and sworn to before
me on the day, month, and year
first above set forth.

_____
Notary Public

\northlin\affidavi.inc.kwc

Exhibit A
Page 5 of 5

April 14, 1993

Ms. Helen Cumbo
Administrator
Corporations Division
STATE OF LOUISIANA
SECRETARY OF STATE
P. O. Box 94125
Baton Rouge, Louisiana 70804

Dear Ms. Cumbo:

On May 27, 1992, I submitted my resignation effective May 31, 1992 as Director/Secretary/Registered Agent for Northline Enterprises, Inc. Please note your records accordingly. Enclosed is fee of $20.00.

Thank you.

Yours truly,

*Angela Micik*

Angela Micik
3201 St. Charles Avenue, #114
New Orleans, Louisiana 70115

Exhibit B
Page 1 of 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF

L'EXPRESS, INC.

DEBTOR

NUMBER

91-10075B

CHAPTER 7
LIQUIDATION

BEECH ACCEPTANCE CORP., INC.

PLAINTIFF

V.

L'EXPRESS, INC.,
L'EXPRESS HOLDINGS, INC.,
NORTHLINE ENTERPRISES, INC.

DEFENDANTS

ADVERSARY NUMBER

92-1048

BEECH ACCEPTANCE CORP., INC.

PLAINTIFF

V.

L'EXPRESS HOLDINGS, INC.

DEFENDANT

CONSOLIDATED WITH

92-1072

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These matters came before the Court on a Complaint Seeking Temporary Restraining Order, Preliminary and Permanent Injunctive Relief (No. 92-1048) and a Complaint for Recognition of Judgment, Sequestration, Temporary Restraining Order and

Preliminary and Permanent Injunction (No. 92-1072)[1], both filed by Beech Acceptance Corporation, Inc. ("Beech"), a creditor of the Debtor, L'Express, Inc., against the Debtor and two related companies, L'Express Holdings, Inc. ("LHI") and Northline Enterprises, Inc. ("Northline"). A trial was held on these matters on April 2, 1992, at which time the Court heard the testimony of witnesses and the statements of counsel. Upon consideration of the evidence offered, the statements made, the memoranda submitted and the applicable law, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Debtor, LHI and Northline are all Louisiana corporations, with their principal places of business in the Parish of Jefferson, State of Louisiana. Unity Investments Company, Ltd. ("Unity") is a Bahamian corporation with its principal place of business in the Parish of Orleans, State of Louisiana. Read Industries, Inc. ("RII") is a Utah corporation with its principal place of business in the Parish of Orleans, State of Louisiana. Beech is a Kansas corporation with its principal place of business in the County of Sedgwick, State of Kansas.

2. Stephen L. Read owns 100% of the outstanding common stock of Unity. Unity owns approximately 55% of the outstanding common stock of RII, with an additional 5% being owned by Mr. Read individually. Unity also owns 100% of the outstanding common stock

---

[1] This Complaint was originally filed in the United States District Court for the Eastern District of Louisiana and was referred to this Court.

Exhibit C
Page 2 of 11

of Northline. RII owns 100% of the outstanding common stock of LHI, which in turn owns approximately 92% of the outstanding common stock of the Debtor. Mr. Read and Angela Micik are the sole directors of Unity, RII, Northline and LHI. Additionally, Mr. Read and Ms. Micik are the President and Secretary, respectively, of each of these entities.

3. On September 14, 1990, LHI executed and delivered to Beech a Security Agreement by which LHI granted to Beech "a priority security interest in and to all of [LHI's] present and future accounts and other rights to receive the payment of money, including without limitation, receivables, accounts receivable, rights to receive the payment of money under past, present or future contracts, subscriptions or agreements whether or not earned by performance and rights to receive payments from the customers and other obligors." This agreement further provided that upon default by LHI in payment of indebtedness owed to Beech, Beech could take possession of LHI's accounts receivable and proceeds thereof, collect on these accounts and apply them to the indebtedness.

4. On September 25, 1990, a Security Agreement was entered into between the Debtor and Beech, by which the Debtor granted to Beech a security interest similar to that granted by LHI to Beech, as security for indebtedness owed by the Debtor to Beech. This agreement was properly perfected by the filing of a UCC-1 Financing Statement on September 25, 1990.

5. On January 9, 1991, the Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code.



6. On May 16, 1991, a Judgment was entered in <u>Beech Acceptance Corp., Inc. v. L'Express, Inc. et al</u>, Civil Action No. 90-1576C, in the United States District Court for the District of Kansas, granting judgment in favor of Beech and against LHI in the amount of $2,883,550.56, plus interest. Payment of this indebtedness is secured by the September 14, 1990 Security Agreement.

7. On May 22, 1991, the Court entered an Order for Adequate Protection recognizing Beech's security interest in the Debtor's accounts receivable.

8. In July and August of 1991, two of the Debtor's officers at the time, Bruce Nobles, its President and Thomas Pickral, its Chief Financial Officer, had discussions with Mr. Read concerning a possible loan from Northline to the Debtor. On August 16, 1991, the Court authorized a loan in the amount of $350,000.00 from Northline to the Debtor. In consideration thereof, the Debtor executed and delivered to Northline a promissory note, dated August 16, 1991, in the original principal amount of $350,000.00 (the "Note"). Also on that date, the Debtor and Northline executed a Security Agreement pursuant to which the Debtor granted to Northline a "first lien and continuing Security Interest in [L'Express'] Accounts and all proceeds of the Accounts and all books and records (including customer lists, credit files, computer programs, printouts and other materials and records) of [L'Express] pertaining to any of the foregoing." This agreement further provided that, in the event of default in payment of the Note, Northline could take possession of the Debtor's accounts receivable

Exhibit C
Page 4 of 11

and apply the proceeds to any indebtedness owed by the Debtor pursuant to the Note.

9. In order to further facilitate this loan, Beech subordinated its security interest in the Debtor's accounts receivable to the security interest granted to Northline.

10. The reverse side of the Note bears the following language: "Pay to the order of L'Express Holdings, Inc. without recourse and warranty of any nature whatsoever," and is signed by Stephen L. Read as President of Northline. This notation is not dated.

11. The Debtor's proposed Plan of Reorganization, at Paragraphs 1.4 and 4.2, indicates that LHI is the assignee of the Note. That Plan was never confirmed and, in fact, the Debtor's case was converted to a Chapter 7 case in February of 1992. Prior to conversion, however, the Debtor was again in need of cash for operating expenses. In January of 1992, Mr. Read approached the First Guaranty Bank ("FGB") in Hammond, Louisiana as a new lending source. He testified that a loan would actually be made by FGB to LHI and the funds then "re-loaned" to the Debtor. The lending officer for FGB was Danna Doucet. His memorandum concerning the loan indicates that LHI's main asset was the Note. However, he testified that he understood that the Note would be assigned to LHI at the closing of the loan and that his statement in the loan memorandum was meant to indicate the assets of LHI after the closing. Mr. Doucet further testified that he saw only a copy of the Note.



12. Mr. Read provided Harry Holladay, the attorney for FGB, with the necessary documents, either directly or through Mr. Doucet. This documentation included financial statements for LHI which show the Note as an asset. These statements were proforma (although one does not bear that notation) and Mr. Read testified that they were intended to reflect the status of LHI's assets after the closing. Also included in the documents provided to Mr. Holladay was a <u>copy</u> of the Note bearing the above-mentioned endorsement. Mr. Holladay stated that he understood that the Note <u>would</u> be transferred. He also testified that he was concerned about the endorsement on the Note not being dated and that there was no evidence of consideration for the transfer. He was going to require a corporate resolution from Northline and LHI concerning the transfer, a subordination from Beech and physical possession of the Note for the loan closing.

13. Ms. Micik testified that the Note always remained in the possession of Northline in its files and that there was no delivery of the Note to LHI. She also testified that the corporate records of the various corporations mentioned above, including Northline and LHI, were at all times kept separate. She further stated that the only time the Note was removed from Northline's files was when she removed it to type the endorsement on the reverse, or in connection with this litigation. She stated that she always returned the Note to the Northline files, where it remains.

14. In connection with the proposed loan, the Debtor submitted to the Court a Stipulation and Order which, in Paragraph



Exhibit C
Page 6 of 11

III, states that the Note had been transferred from Northline to LHI. That Stipulation and Order was refused by the Court essentially because the Court decided not to burden the Debtor with further debt. Therefore, even though the loan was approved by FGB, it was never closed.

15. Ultimately, the Debtor defaulted on the Note and, on February 27, 1992, Northline issued a demand letter to the Debtor and then began collecting on the Debtor's accounts receivable. Also, the Debtor paid approximately $30,000.00 to Northline. Mr. Pickral testified that Northline, and not LHI, made demand upon the Debtor and that the payments were made to Northline and not to LHI.

16. On March 4, 1992, Beech filed the Complaint in Case No. 92-1048 and subsequently the Court issued a temporary restraining order enjoining Northline from collecting on the Note or the accounts receivable and requiring that the receivables collected be delivered to the Trustee of the Debtor's estate.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and by virtue of the matter being referred to this Court by the United States District Court. This matter is core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) and (K).

2. The Complaints herein, although literally concerning the recognition of Beech's prior judgment against LHI and the enjoining of the transference of the Debtor's accounts receivable and the proceeds therefrom to Northline, in essence seek a

Exhibit C
Page 7 of 11

determination of the ownership of the Note. Beech asserts the Note was transferred to LHI and that its security interest in LHI's accounts entitles Beech to collect, as collateral securing the Note, on the Debtor's accounts. The Defendants assert that the Note was never transferred, is still owned by Northline, and that Northline is, therefore, entitled to continue collecting on the Debtor's accounts.

    3.    The issue of whether the Note was or was not transferred is governed by Louisiana law. Under Louisiana law, a promissory note is an incorporeal right. La. C.C. art. 461. In Louisiana, the "tradition", or transfer, of an incorporeal right requires the <u>delivery</u> of the title to the incorporeal. La C.C. arts. 2477, 2481. Under Louisiana law, a promissory note is also a negotiable instrument, the transfer of which is currently governed by Louisiana's version of the Uniform Commercial Code. Section 3-202 of that code provides as follows: "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by <u>delivery</u> with any necessary endorsement; . . . ." La. R.S. 10:3-202(1) (Emphasis added). "Delivery" with respect to instruments is defined as "voluntary transfer of possession, actual or constructive, from one person to another." La. R.S. 10:1-201. According to Louisiana jurisprudence, delivery sufficient to transfer a negotiable instrument "means relinquishing control or dominion over the property and placing it within the control or dominion of the person whom the deliverer intends to have control



Exhibit C
Page 8 of 11

of the property thereafter." Succession of Young, 563 So.2d 502 (La. App. 4th Cir. 1990).

4. Based upon the evidence outlined in the above factual findings, the Court finds that the essential element of sufficient delivery of the Note to LHI was never accomplished. Consequently, the Note was not legally transferred or negotiated to LHI, LHI is not the holder of the Note and Northline continues to hold the Note. The evidence shows that, while the Note may have been endorsed to LHI, it never left the possession, control and dominion of Northline. The testimony of the witnesses shows that the completed transfer, which must have included delivery of the Note, was _anticipated_ at the closing of the FGB loan. The loan was never closed and there was no evidence that the delivery was ever made.

5. Beech asserts that the representations in the Plan and the Stipulation and Order concerning an alleged transfer and assignment of the Note to LHI are admissions that the transfer and assignment actually took place. Stipulations and pleadings can be treated as judicial admissions. Matter of Christian & Porter Aluminum Co., 584 F.2d 326 (9th Cir. 1978); In re Fill, 68 B.R. 923 (Bankr. S.D.N.Y. 1987). "'Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a _fact_ from issue and dispensing wholly with the need for proof of the _fact_.'" American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988), quoting Matter of Fordson Engineering Corp., 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982) (Emphasis added). Under Louisiana law, a judicial confession is a "declaration made

Exhibit C
Page 9 of 11

by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." La C.C. art. 1853.

It is well-settled under federal law that stipulations by the parties to litigation as to questions of <u>law</u> are not binding on courts. <u>Swift & Co. v. Hocking Valley R. Co.</u>, 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917); <u>Overton v. Austin</u>, 748 F.2d 941, 957, fn.19 (5th Cir. 1984); <u>Equitable Life Assurance Society of the United States v. MacGill</u>, 551 F.2d 978 (5th Cir. 1977). Under Louisiana law, it is also well-settled that questions of law cannot be confessed or admitted. <u>Jardell v. Hillin Oil Co.</u>, 485 So.2d 919 (La. 1986); <u>Cities Service Oil and Gas v. State</u>, 574 So.2d 455 (La. App. 2nd Cir. 1991). Furthermore, stipulations and other judicial admissions which are "'couched in conclusory terms are entitled to less deference than those couched in evidentiary terms.'" <u>Overton</u>, 748 F.2d at 957, fn.19, quoting <u>Coastal Sales Marketing, Inc. v. Hunt</u>, 694 F.2d 1358, 1369 (5th Cir. 1983).

If a judicial admission is withdrawn, amended or superseded by another pleading, it is no longer useful as a judicial admission, but may be an evidentiary admission. <u>Fordson</u>, 25 B.R. at 509. As such it is not conclusive, but may be contradicted or explained. <u>Id</u>. See also <u>Valvoline Oil Co. v. Krauss</u>, 335 So.2d 64 (La. App. 3rd Cir. 1976), citing <u>Mouledous v. Poirer</u>, 221 So.2d 291 (La. 1969).[2]

    6. The pronouncements contained in the Plan and the Stipulation and Order concerning the alleged transfer and

---

[2] <u>Valvoline</u> and <u>Mouledous</u> were decided under LSA-R.C.C. art. 2291, the predecessor to art. 1853. Article 1853 restated but did not change prior law.

Exhibit C
Page 10 of 11

assignment of the Note to LHI can be considered judicial admissions or confessions. However, the Court finds that they address questions of law, not fact. In view of the legal precedent cited above, the Court is not bound by such admissions or confessions. Furthermore, even if the relevant paragraphs of the Stipulation and Order and the Plan are taken merely as evidentiary admissions, the Court finds that the other evidence presented contradicts these pronouncements. Accordingly, the Court finds that the representations of the Stipulation and Order and the Plan do not alter the Court's pervious finding on the issue of the transfer.

7. In summary, the Court finds that there was no transfer of the Note from Northline to LHI. Consequently, Beech is not entitled to collect on the Debtor's accounts as collateral of LHI. Northline is within its security rights to collect upon these accounts. Therefore, the Court will dismiss the Complaints filed by Beech in these consolidated matters and will further dissolve the temporary restraining order previously issued against Northline. An appropriate Judgment will be entered.

New Orleans, Louisiana, this 11th day of May, 1992.

signed: T. M. Brahney, III
---
T. M. BRAHNEY, III
U. S. BANKRUPTCY JUDGE

Exhibit C
Page 11 of 11

Jay Dardenne
SECRETARY OF STATE

State of Louisiana
Secretary of State



COMMERCIAL DIVISION
(225) 925-4704

Fax Numbers
(225) 932-5317 (Admin. Services)
(225) 932-5314 (Corporations)
(225) 922-0452 (UCC)

| Name | Type | City | Status |
|---|---|---|---|
| NORTHLINE ENTERPRISES, INC. | Business Corporation | NEW ORLEANS | Inactive |

**Business:** NORTHLINE ENTERPRISES, INC.
**Charter Number:** 34371534 D
**Registration Date:** 1/15/1991
**State Of Origin:**
**Domicile Address**
    1308 WASHINGTON AVE.
    NEW ORLEANS, LA 70130
**Mailing Address**
    1308 WASHINGTON AVE.
    NEW ORLEANS, LA 70130

# Status

**Status:** Inactive 
**Inactive Reason:** Action by Secretary of State
**File Date:** 1/15/1991
**Last Report Filed:** 7/8/1992
**Type:** Business Corporation

# Officer(s)

Additional Officers: No

| Officer: | STEPHEN L. READ |
|---|---|
| Title: | President, Director |
| Address 1: | 1308 WASHINGTON AVE. |
| City, State, Zip: | NEW ORLEANS, LA 70130 |

# Amendments on File (2)

| Description | Date |
|---|---|
| Domicile, Agent Change or Resign of Agent | 4/19/1993 |
| Revoked | 5/15/1998 |

Print

Exhibit D
Page 1 of 1

# STATE OF FLORIDA
## OFFICE of VITAL STATISTICS
### CERTIFIED COPY
### CERTIFICATE OF DEATH — FLORIDA

**1. DECEDENT'S NAME:** STEPHEN LOUIS READ
**2. SEX:** Male
**3. DATE OF DEATH:** [redacted], 1999
**4. SOCIAL SECURITY NUMBER:** [redacted]-3920
**5a. AGE Last Birthday:** 47
**6. DATE OF BIRTH:** [redacted] 1952
**7. BIRTHPLACE:** New Orleans, Louisiana
**8. WAS DECEDENT EVER IN U.S. ARMED FORCES?** No
**9a. PLACE OF DEATH:** Hospital Inpatient
**9b. INSIDE CITY LIMITS?** Yes
**9c. FACILITY NAME:** Mt. Sinai Medical Center
**9d. CITY, TOWN, OR LOCATION OF DEATH:** Miami Beach
**9e. COUNTY OF DEATH:** Miami-Dade
**10a. DECEDENT'S USUAL OCCUPATION:** Owner
**10b. KIND OF BUSINESS/INDUSTRY:** Yatch Brokerage
**11. MARITAL STATUS:** Married
**12. SURVIVING SPOUSE:** Allison Burch
**13a. RESIDENCE - STATE:** Florida
**13b. COUNTY:** Miami-Dade
**13c. CITY, TOWN, OR LOCATION:** Miami
**13d. STREET AND NUMBER:** 19233 Fisher Island Drive
**13e. INSIDE CITY LIMITS?** Yes
**13f. ZIP CODE:** 33109
**14. WAS DECEDENT OF HISPANIC OR HAITIAN ORIGIN?** No
**15. RACE:** White
**16. DECEDENT'S EDUCATION:** 12 / 1
**17. FATHER'S NAME:** Alexander Louis Read
**18. MOTHER'S NAME:** Natalie Owings
**19a. INFORMANT'S NAME:** Allison Read
**19b. MAILING ADDRESS:** 19233 Fisher Island Drive, Miami, Florida 33109
**20a. METHOD OF DISPOSITION:** Removal from State
**20b. PLACE OF DISPOSITION:** [redacted] Cemetery
**20c. LOCATION:** New Orleans, Louisiana

**22b. DATE SIGNED:** [redacted]/99
**22c. HOUR OF DEATH:** 9:15 A.M.

**24. NAME AND ADDRESS OF CERTIFIER:** Enrique Davila, M.D. 4306 Alton Road, Miami Beach, Florida 33139

**25b. LOCAL REGISTRAR:** Maurice Darden
**25c. DATE REGISTERED:** [redacted] 1999

**27a. WAS AN AUTOPSY PERFORMED?** No
**28. CASE REPORTED TO MEDICAL EXAMINER?** Yes

THIS IS A CERTIFIED TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE

BY Maurice Darden — State Registrar, [redacted] 1999

Exhibit E
Page 1 of 1

**WARNING 10873769:** THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK.

THE DOCUMENT FACE CONTAINS A MULTI-COLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOCHROMIC INK.



FLORIDA DEPARTMENT OF HEALTH

DOH FORM 1564 (10/98)

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

RE: L'Express, Inc. ) Case: 91-10075
)
) **AFFIDAVIT OF HEIRSHIP**
)
Debtor(s) )

I, Allison Read, under the penalty of perjury under the laws of the United States of America declare and being duly sworn on oath states:

1. I am the surviving spouse to Stephen L. Read, and I am of legal age and a resident of Slidell, Louisiana.

2. Stephen L. Read passed away on September 3rd, 1999 as a resident of Miami, Florida at the age of 47.

3. Stephen L. Read did not have a Last Will & Testament at the time of her death.

4. Zero children were born to and none adopted by the decedent and myself.

5. The heir to the Estate of Stephen L. Read is myself, Allison Read.

6. As surviving spouse and heir to the Estate of Stephen L. Read, I am requesting the release of the unclaimed funds.

7. I have appointed Dilks & Knopik, LLC, as my lawful Attorney-in-Fact, who is duly authorized by the attached original Power of Attorney to file this Application for Payment of Unclaimed Funds.

Dated: 8/23/10  By: _Allen B Read_
                    Allison Read

STATE OF Louisiana, Parish OF Orleans

On August 23, 2010 before me, personally appeared (insert name of the signer) Allison Burch Read personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my had and official seal.

_____
Notary Public

My commission expires on __Upon Death__

AMY G. SMITH
Notary Public
State of Louisiana
Notary ID Number 083826
Jefferson Parish

Exhibit F
Page 1 of 1